IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.: 1:17-cv-1533-WJM-NRN

656 LOGAN STREET CONDOMINIUM ASSOCIATION,

Plaintiff,

v.

OWNERS INSURANCE COMPANY,

Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S F.R.E. 702 MOTION AND REQUEST
FOR HEARING AND PRESENTATION OF WITNESS**

---

Plaintiff, 656 Logan Street Condominium Association ("656 Logan"), by and through its

undersigned attorneys, hereby responds in opposition to Defendant, Owners Insurance Company's

("Owners"), Motion to Limit the Testimony of Howard Altschule Pursuant to F.R.E. 702 [ECF

No. 80], and respectfully requests a hearing and presentation of witness. In support thereof,

Plaintiff states the following:

### CERTIFICATE OF CONFERRAL PER D.C.COLO.LCIVR 7.1 AND REQUEST FOR HEARING

Upon conferral, Defendant opposes Plaintiff's Request for a Hearing on its Motion and to

present Altschule for the benefit of this Court.

## I.    BACKGROUND.

656 Logan owns a multi-unit three-story residential housing complex in Denver, Colorado,

which was covered by a property insurance policy (the "Policy") issued by Owners from December

30, 2014 to December 30, 2015. On June 24, 2015, a hailstorm occurred over the 656 Logan

property resulting in damages necessitating roof replacement.

Owners assigned its adjuster, Daniel Fossen ("Fossen"), to conduct an inspection and evaluate 656 Logan's claims for hail-related damages resulting from the June 24, 2015 storm. Fossen performed an inspection of the property and identified hailstone impact damages to the roofing system resulting from the June 24, 2015 hailstorm. Fossen issued an inter-office report to Owners, concluding that there was a severe hailstorm reported in the area on June 24, 2015, concluding that the hail damage to the roof was extensive enough to warrant roof replacement as a result of the June 24, 2015 hailstorm. [ECF No. 69, Exhibit 4]. Fossen completed an estimate for total replacement of the roof and recommended that Owners release the actual cash value payment less 656 Logan's deductible. *Id.* Owners is now disclaiming coverage in its entirety.

Through the course of this litigation, 656 Logan retained a Certified Consulting Meteorologist (C.C.M.), Mr. Howard Altschule ("Altschule") to perform an in-depth weather analysis and forensic weather investigation at the 656 Logan property in order to determine what the weather conditions were on June 24th, 2015 and June 28th, 2016. Altschule is prepared to testify, within a reasonable degree of scientific certainty that hail up to 2.5" fell at the 656 Logan property on the reported June 24, 2015 date of loss and 1.25" hail fell at the property on a subsequent storm date, June 28, 2016. Altschule applied the same methodology when evaluating both storm dates and providing the conclusions within his report.

Despite not deposing Altschule, on April 29, 2019, Owners filed its Motion to Limit the Testimony of Howard Altschule Pursuant to F.R.E. 702 [ECF No. 80]. Specifically, Owners challenges Altschule's two opinions: (1) that hail up to 2.5" in diameter fell at the property on June 24, 2015; and (2) that hail up to 1.25" in diameter fell at the property on June 28, 2016.[1]

---

[1] Defendant also requests this Court to exclude any causation opinions offered by Altschule; however, Altschule did not and will not offer any causation analysis and will only testify regarding the opinions expressed in his report.

In challenging Altschule's opinions, Owners' Motion falsely claims Altschule "failed to employ and apply a scientifically valid methodology in forming his opinions regarding his opinions regarding maximum estimated hail size." *See* [ECF No. 80, pg. 3].

Altschule's report [ECF No. 80, Exhibit 2] fully complies with Rule 26 in stating his (1) Assignment; (2) Methodology; (3) Analysis; and (4) Conclusions.  Altschule's methodology and analysis sections provide detailed references to the multitude of information gathered, obtained, relied upon and analyzed by Altschule in reaching his conclusions. It is truly complexing how Owners is representing to this Court that Altschule relied upon a single data set, the Maximum Estimated Hail Size algorithm, or otherwise insufficient data to reach his conclusions. *See* [ECF No. 80, Exhibit 2].   Instead, it appears Owners is really arguing that Altschule relied too heavily on one of the many data points he considered in reaching a conclusion Owners disagrees with. Such an argument goes to the weight of Altschule's testimony and is not proper for a *Daubert* motion.

## II.    LEGAL STANDARD.

### A.    THE GATEKEEPER FUNCTION.

The United States Supreme Court has mandated that the trial court act as gatekeeper with respect to expert testimony. *Daubert v. Merrill Dow Pharmaceuticals,* 509 U.S. 579, 589 (1993). As such, the trial court is responsible for ensuring that all proffered scientific testimony or evidence is not only relevant, but reliable. *Id.* Since *Daubert,* the Supreme Court has held this gatekeeping function applies not only to scientific testimony, but to all expert testimony. *Kumho Tire Co., LTD. v. Carmichael,* 526 U.S. 137, 147; 119 S. Ct. 1167, 1174; 143 L. Ed. 2d 238, 249-250 (1999).

The 10th Circuit overruled *U.S. v. Nacchio,* 519 F.3d 1140, 1150, 1154 (10th Cir. 2008) ("Nacchio I") and declined to require a single procedural mechanism for the gatekeeping process.

*U.S. v. Nacchio,* 555 F.3d 1234, 1239 (10th Cir. 2009) ("Nacchio II"). The en banc court reasoned that the district court, and not the parties to the suit, properly determines the manner in which the gatekeeping role should be performed. *See Nacchio II,* 555 F.3d at 1245 ("Mr. Nacchio had no entitlement to a particular method of gatekeeping by the district.") Therefore, the federal district courts within the 10th Circuit continue to have the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's method is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises." *Kumho Tire,* 526 U.S. at 152.

Altschule is a professional meteorologist and the data and methods he relied upon are used every day by weatherman and experts all over the country, including doppler radar. Hence, the data and methods used by Altschule in reaching his opinions fall into the latter category that should avoid unnecessary reliability challenges.

### B.    THE ANALYTICAL FRAMEWORK FOR REVIEW.

During the gatekeeping process, the trial court takes two steps: (1) determine whether the expert is qualified to render the proffered opinion; and (2) examine whether the opinion itself is reliable. *U.S. v. Crabbe,* 556 F.Supp.2d 1217, 1221 (D.Colo. 2008) (*citing 103 Investors I, L.P. v. Square D Co.,* 470 F.3d 985, 990 (10th Cir. 2006)). Importantly, the district court's gatekeeping role, however, is not meant "to serve as a replacement for the adversary system: Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attaching shaky but admissible evidence." *Primrose Operating Co. v. National Am. Ins. Co.,* 382 F.3d 546, 562 (5th Cir. 2004) (quoting *United States v. 14.38 Acres of Land, More or Less Situated in Lefore Cty., Miss.,* 80 F.3d 1074, (5th Cir. 2002).

### III.    ARGUMENT.

A.    ALTSCHULE IS QUALIFIED TO GIVE THE OPINIONS HE HAS EXPRESSED IN THIS MATTER.

Contrary to Owners' myopic view of Altschule's expertise and skewed challenge of his report, Altschule is well qualified to opine on the atmospheric conditions and the size of hail that likely fell at the 656 Logan property on a reported date based on review of commonly used data, weather records, and radar analysis. Under *Daubert,* an expert's qualifications are to be considered relevant to the particular opinion or testimony proffered. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008).

Altschule is a distinguished professional in the field of meteorology. Altschule has testified at more than ninety trials; Altschule has been a meteorologist since 1995; Altschule is recognized internationally as a Certified Consulting Meteorologist; and in 2015, and, among other qualifications, Altschule was appointed associate member of the American Society of Civil Engineers (ASCE) standards committee for estimating wind speeds of tornadoes and other wind events.  *See* **Exhibit "1,"** Altschule Affidavit, paragraphs 1-22; *see also,* a copy of Altschule's Curriculum Vitae attached as **Exhibit "2."**

Altschule is qualified as required under *Crabbe* and has stayed well within the reasonable bounds of his area of expertise as required by Fed. R. Evid. 702 in offering his opinions as to the size of hail that resulted from the two weather events he was retained to evaluate. As discussed *infra,* Altschule went well beyond one's local weatherman warning of 2.00" hail that may strike the Denver metro area based only on doppler radar and instead evaluated multiple other reliable and industry standard data points and sources.

B.    ALTSCHULE'S OPINIONS ARE RELIABLE.

In reviewing whether an expert's testimony is reliable, the trial court must "assess the reasoning and methodology underlying the expert's opinion ...." *Dodge v. Cotter Corp.,* 328 F.3d

1212, 1221 (10th Cir. 2003) (*quoting Daubert,* 509 U.S. at 592-93, 113 S.Ct. 2786). No single factor should be dispositive in weighing the reliability of an expert's opinions. *Lovato,* 2002 WL 1424599, 4-5; *see also Ruiz-Troche v. Pepsi Cola of Puerto Rico,* 161 F.3d 77, 85 (1st Cir. 1998). "The requirement of reliability is lower than the merits standard of correctness." *Lovato*, 2002 WL 1424599,4-5; *see also In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 744 (3rd Cir. 1994). "The goal is reliability, not certainty." *Lovato,* 2002 WL 1424599, 4-5.

Within his Rule 26 Report [ECF No. 80, Exhibit 2], Altschule details his methodology and the many different resources he evaluated and utilized in developing his opinions, all of which are used every day by meteorologists and weather professionals throughout the country. Not one of the sources utilized by Altschule is novel or "new". The below list is just a sampling of data points and weather sources Altschule in reaching in his conclusions:

- The Automated Surface Observing Systems (ASOS) program which pulls information from the National Weather Service (NWS), the Federal Aviation Administration (FAA), and the Department of Defense (DOD). The ASOS systems serve as the nation's primary surface weather observing networks. The ASOS systems compile various weather observations, often more than once per hour, called Local Climatological Data (LCD) that are reviewed, maintained, and stored by NOAA.

- The National Weather Service (NWS) Cooperative Observer Program (COOP). Mr. Altschule explains that COOP data consists of daily maximum and minimum temperatures, snowfall, and 24-hour precipitation totals ending at a specific time, such as 7:00 a.m. in many locations.

- The Community Collaborative Rain, Hail and Snow Network (CoCoRaHS), which is a network consisting of volunteers weather observers across the United States, Canada and the Bahamas. These volunteers take daily precipitation measurements and report them to a centralized data store online, where this data is heavily utilized by the NWS, meteorologists, emergency managers and city utilities. CoCoRaHS data is particularly useful in situations where storm systems produce sharp precipitation gradients.

*See* [ECF No. 80, Exhibit 2, pages 3-4].

On page six and continuing into page seven of his report, Altschule explains the reliability of his sources, "[s]uper-resolution Doppler radar images and several other types of weather records

were used in this study. Doppler radar images are useful for locating precipitation. As the radar unit sends a pulse of energy into the atmosphere and if any precipitation is intercepted by the energy, part of the energy is scattered back to the radar. These return signals, called 'radar echoes', are assembled to produce the images."

Altschule explains, "the location of the colored radar echoes indicates where precipitation is falling, and the various colors indicate the intensity of the precipitation through the color code key on the left side of the radar image itself. Doppler radar images are received approximately every six (6) minutes and can determine if precipitation was failing at the incident location and if so, when it started and stopped." *See* Altschule report, [ECF No. 80, Exhibit 2, page 6-7].

Altschule proceeded to use the industry-accepted professional Doppler radar viewing program called Gibson Ridge Analyst Edition (GRAE) in studying the numerous Doppler radar and Doppler-radar dual polarization products that he zoomed in over 656 Logan's property. This GRAE program is utilized by every National Weather Service office in the country. *See* **Exhibit "1,"** Altschule Affidavit, paragraph 40. Altschule then determined the vertical structure of the thunderstorm over the incident location and how those values compared to the environmental freezing level and the - 20-degree Celsius level.  All of the vertical thunderstorm structure values, the Doppler radar values, and the Dual Polarization values were all listed and discussed within his Rule 26 Report. *See* [ECF No. 80, Exhibit 2, page 7].

After his analysis of the June 24, 2015 storm, Altschule utilized the same industry-accepted methodology, practices, and principles for the June 28, 2016 storm. He listed and cited to many different Doppler radar and Dual Polarization images over the 656 Logan property, and determined the indicated values, readings and intensity of the storm at the incident location.  Multiple radar

images for the June 28, 2016 storm were analyzed and included in Altschule' s report.  [ECF No. 80, Exhibit 2, pages 28-36].

Altschule once again proceeded to use the industry-accepted professional Doppler radar viewing program called Gibson Ridge Analyst Edition (GRAE) in studying the numerous Doppler radar and Doppler-radar dual polarization products that he zoomed in over 656 Logan's property. This GRAE program is utilized by every National Weather Service office in the country. *See* **Exhibit "1,"** Altschule Affidavit, paragraph 41. Altschule then determined the vertical structure of the thunderstorm over the incident location and how those values compared to the environmental freezing level and the - 20-degree Celsius level.  All of the vertical thunderstorm structure values, the Doppler radar values, and the Dual Polarization values were all listed and discussed within his October 23, 2017 report related to the June 28, 2016 storm. *See* [ECF No. 80, Exhibit 2, page 27].

Altschule reviewed and analyzed numerous different types of weather records and data including (1) local storm reports [ECF No. 80, Exhibit 2, pages 19-24 and page 39]; (2) storm data [ECF No. 80, Exhibit 2, pages 25-26 and page 40]; (3) discussion of surface weather conditions/observations [ECF No. 80, Exhibit 2, page 7 and page 27];  (4) Super-resolution Doppler radar base reflectivity images [ECF No. 80, Exhibit 2, pages 13-15 on the top left panel and pages 33-36 on the top left panel];  (5) Doppler radar base velocity images [ECF No. 80, Exhibit 2, pages 13-15 on the top right panel and pages 33-36 on the top right panel]; (6) dual-polarization products from Doppler radar including differential reflectivity images [ECF No. 80, Exhibit 2, pages 13-15 on the bottom left panel and pages 33-36 on the bottom left panel]; (7) correlation coefficient images [ECF No. 80, Exhibit 2, pages 13-15 on the bottom right panel and pages 33-36 on the bottom right panel ]; (8) Doppler radar cross-section reflectivity images

[ECF No. 80, Exhibit 2, pages 9-10 and pages 28-31]; (9) Doppler radar cross-section differential reflectivity images [ECF No. 80, Exhibit 2, pages 11-12 and page 32]; and (10) Doppler radar Maximum Estimated Hail Size (MEHS) images [ECF No. 80, Exhibit 2, pages 16-17].

The vast majority of Owners' Motion relies on the complete fallacy that Altschule only considered one source in reaching his conclusions, *i.e.,* data from the Maximum Estimated Hail Size ("MEHS"). The plethora of data, radar images, and research discussed above clearly establishes Altschule is qualified and his opinions within his forty-plus page report are reliable. The weather data and climatological records used for this analysis are the official records that meteorologists rely upon every day during the normal course of business.  *See* **Exhibit "1,"** Altschule Affidavit, paragraph 39. It is clear Altschule's data and methods satisfy the requirements under *Crabbe* and *Daubert*.

### C.    ALTSCHULE'S OPINIONS WILL BE HELPFUL TO A JURY.

Courts consider three non-exclusive factors in determining whether the testimony will assist the trier of fact: (1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility. In essence, the question is "whether [the] reasoning or methodology properly can be applied to the facts in issue." *Daubert,* 509 U.S. at 593,113 S.Ct. 2786; *U.S. v. Rodriguez-Felix,* 450 F.3d 1117, 1122 -1123 (10th Cir. 2006).

Usefulness means that the proffered testimony will assist the fact finder to either understand other evidence or to determine a fact in issue. *Masters v. People,* 58 P.3d 979, 989 (*citing Lanari v. People,* 827 P.2d 495, 502 (Colo. 1992)). Usefulness thus hinges on whether there is a logical relation between the proffered testimony and the factual issues involved in the case. *People v. Martinez,* 74 P.3d 316, 323 (Colo. 2003) (*citing In re Paoli R.R. Yard PCB Litig.,* 35

F.3d 717, 743, 745, & n. 13 (3d Cir. 1994)).

The two main facts at issue are (1) the extent of hail damage and cost for repair; and (2) what storm caused the damage. Altschule's opinions regarding the atmospheric conditions and the size of the hail that fell at the 656 Logan property on June 24, 2015 and June 28, 2016 will assist the trier of fact in determining both facts at issue.

First, the 656 Logan property has a low-slope roofing system. Engineering studies, though not determinative, provide general threshold requirements for hail to damage different types of material. Generally speaking, the insurance industry has concluded roughly 2.00" hail is required to damage the type of roofing system at the 656 Logan property. Based on this industry research, the size of hail is relevant and will assist the trier of fact in determining the extent of the damages to the 656 Logan property.

Second, and most important, is Altschule's opinions regarding the size of hail that fell at the 656 Logan property will assist the trier of fact in determining what hail storm caused the damages confirmed by Fossen and 656 Logan's engineer to recommend a roof replacement.

Altschule's opinions are clearly relevant to these proceedings and his opinions provide insight and analysis that are not within a juror's common knowledge and experience. Altschule's opinions will be very useful to a jury in this matter.

## IV.    **CONCLUSION.**

Altschule's opinions meet the threshold requirements set forth in Rule 702 and therefore his testimony in this case should be allowed.

WHEREFORE, Plaintiff, 656 Logan Condominium Association respectfully requests that this Court Deny Defendant, Owners Insurance Company's Motion to Limit the Testimony of Howard Altschule and/or allow Plaintiff a hearing to present the witness before Court.

Respectfully submitted this 10th day of June 2019.

*s/ Larry E. Bache, Jr.*
Larry E. Bache, Jr.
Jonathan E. Bukowski
Timothy G. Burchard, II
Michael William Duffy
MERLIN LAW GROUP, P.A.
1001 17th Street, Suite 1150
Denver, CO 80202
Telephone: 720-665-9680
Facsimile:  720-665-9681
E-Mail: lbache@merlinlawgroup.com
E-Mail: jbukowski@merlinlawgroup.com
E-Mail: tburchard@merlinlawgroup.com
E-Mail: mduffy@merlinlawgroup.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2019, I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S 702 MOTION AND REQUEST FOR HEARING AND PRESENTATION OF WITNESS** with the Clerk of Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following e-mail address:

Gregory Giometti, Esq.
John Mereness, Esq.
Sean Conrecode, Esq.
Giometti & Mereness, P.C.
501 S. Cherry Street, Suite 1000
Denver, CO 80246
Phone: (303) 333-1957
Fax: (303) 377-3460
E-Mail: ggiometti@giomettilaw.com
E-Mail: jmereness@giomettilaw.com
E-Mail: sconrecode@giomettilaw.com
*Attorneys for Defendant*

*s/ Agnieszka Karcz-Sickles*
Paralegal to Jonathan E. Bukowski, Esq.

Page **11** of **11**